ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2018-Nov-26 22:22:01
60CV-18-8097
C06D02 : 18 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## _____ DIVISION

**AMANDA ROWLETT**                                         **PLAINTIFF**

**v.**                  **CASE NO. _____**

**G4S SECURE SOLUTIONS (USA) INC.,**
**Fictitious names, G4S, G4S USA,**
**G4S WACKENHUT, WACKENHUT**                  **DEFENDANT**

### COMPLAINT

Comes now Plaintiff Amanda Rowlett ("Plaintiff") by and through her attorneys, and for her Complaint against Defendant G4S Secure Solutions (USA), Inc. operating in Arkansas using the fictitious names, G4S, G4S USA, G4S Wackenhut, and Wackenhut ("Defendant") and submits the following:

### JURISDICTION AND VENUE

1.  This is an action for gender discrimination, harassment, hostile work environment, and retaliation for engaging in a protected activity in violation of the Arkansas Civil Rights Act of 1993 (A.C.A. § 16-123-101, et. seq. and; A.C.A. §§ 16-123-107 to 16-123-108) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*). This action is also for discrimination, interference and retaliation for use of medical leave in violation of 29 U.S.C. §2601, The Family and Medical Leave Act of 1993 ("FMLA"). All the foregoing violations occurred at the North Little Rock and

Lonoke Arkansas location of Defendants in Pulaski County, Arkansas and resulted in the constructive discharge of Plaintiff in violation of the foregoing statutes and codes. The jurisdiction of this Court is conferred pursuant to the Arkansas Civil Rights Act granting this Court jurisdiction over the claims.

2. Defendant has registered to do business in the state of Arkansas with the Arkansas Secretary of State's Office. Defendant has listed its principal address for doing business within this state as 425 West Broadway, Ste. K, North Little Rock, AR 72114, Pulaski County, See attached hereto and incorporated by reference Exhibit "A" the Screen-capture of Defendant's information on file with the Arkansas Secretary of State's Office as of November 26, 2018. The same information was on file with the Secretary state at all times relevant to the instant lawsuit. As the principal place of business for Defendant is in Pulaski County, venue is proper before this Honorable Court in accordance with A.C.A. § 16-55-213.

3. Plaintiff was a resident of White County, Arkansas, and at the time the claims arose, was an employee of Defendant. At the time, her claims arose in this matter, Plaintiff was assigned to work by Defendant at Remington Arms located in Lonoke, Arkansas.

4. Defendant is a foreign Florida entity registered to do business in the state of Arkansas. Defendant has listed its principal address for doing business within this state as 425 West Broadway, Ste. K, North Little Rock, AR 72114, Pulaski County. The registered agent listed with the Arkansas

Secretary of State for service of process is The Prentice-Hall Corporation System, Arkansas, 300 Spring Building, Ste. 900, 300 S. Spring Street, Little Rock, Arkansas 72201. See Exhibit "A" the Screen-capture of Defendant's Arkansas Secretary of State's Office Information as of November 26, 2018.

5. Plaintiff filed an EEOC questionnaire and charge with the Equal Employment Opportunity ("EEOC") within 180 days of the adverse employment action and thereafter amended her Charge to include her Constructive Discharge on or around, July 17, 2018, and was issued a Right to Sue letter on or about August 28, 2018.

## ALLEGATIONS OF FACT

6. Plaintiff is 37 year old white female. She was 36 at the time her cause of action arose in this matter and was 37 at the time of her constructive discharge.

7. Defendant previously employed Plaintiff for a period of months beginning in the fall of 2014 continuing until the summer of 2015. Defendant rehired Plaintiff on or around March 22, 2016.

8. At the time of her rehire in the Spring of 2016, she was a Custom Protection Officer at the Remington Arms site in Lonoke Arkansas. Her site supervisor was Tim Roachell. During various times during her employment, Plaintiff and her co-workers would be armed with handguns and were trained to handle these firearms. Defendant's employees worked regularly around explosives.

9. During her employment, Plaintiff applied for and was approved FMLA medical leave for the care of another, her mother. It took over 3 weeks for Defendant to respond to Plaintiff's requests for the FMLA paperwork.

10. Plaintiff's mother had been diagnosed with Stage 4 lung cancer. Plaintiff was her primary caregiver and, as such, Plaintiff's medical leave was considered intermittent FMLA medical leave so that she could care for her mother. Plaintiff was required by Defendant to re-certify this leave every 3 months and she did as instructed by Defendant.

11. Upon information and belief, other comparable employees were not required to re-certify for FMLA leave every 3 months, as was Plaintiff.

12. At times, Plaintiff would be instructed to attend "mandatory meetings" for which she was told she might not be paid instead of using her leave to take her mother to necessary appointments, medical treatments, and/or hospital stays.

13. In April of 2017, Plaintiff also applied for and received FMLA leave for a surgery that she needed. This caused her to miss work from April 5, 2017 to April 10, 2017. She was later written up for her use of this leave and her leave for her mother. See *infra* for a more in-depth discussion.

14. At all relevant times, Defendant's Human Resources department was located at the North Little Rock location of Defendant. Plaintiff was

assigned to work at Defendant's Lonoke location at Remington Arms site; where Defendant had been contracted to provide armed and unarmed security at this facility (that is not currently named as a party in this lawsuit).

15. Mr. Tim Roachell was the site supervisor at this location until sometime in February 2017 at which time he was replaced with Jay Scarborough until approximately December 7, 2017. Interestingly, Mr. Scarborough was escorted off the property on that day and was terminated on or around December 15, 2017.

16. Plaintiff's Area Supervisor was James Medlin and he worked at the North Little Rock location of Defendant as did the Branch Manager, Steven Willis. The North Little Rock location was responsible for approving all schedules and actions of the on-site supervisors as well oversaw the operations at the Remington Arms facility.

17. Plaintiff worked without major incident until approximately December 2016. At this time, Mr. Roachell's behavior had escalated to a point that Plaintiff began complaining about it to Human Resources.

18. After contacting Human Resources on December 30, 2016, Plaintiff was instructed by Tasha Pankey, a manager in HR, to call the Honor Hotline and report certain items so that an investigation would begin. Plaintiff immediately did as she had been instructed. Plaintiff reported several incidents to Ms. Pankey of the physical aggression displayed by Mr.

Roachell that were directed at Plaintiff among other items but Ms. Pankey had carefully instructed her what to state and she followed those instructions.

19. Starting in the fall of 2016, Mr. Roachell had continually harassed Plaintiff and other female employees, cursed at her and them and talked to her and them in a derogatory manner. He continually singled out only female workers and the male co-workers were not subjected to this treatment; therefore, making it based upon gender or sex. For instance, when Plaintiff would inquire about simple schedule change, Mr. Roachell would tell Plaintiff that she did not need to see her husband; that she "did not need any damn kids"; and that if she did not like it she could "put her goddamn badge on the fucking counter and carry [her] fucking ass to the office because [she] won't work at Remington as long as [he was] the supervisor". Mr. Roachell began pulling on Plaintiff's ponytail while cursing at her. When she would ask him to stop it and/or state that it was unwelcome, it only became worse. He would come up behind Plaintiff and surprise her by pulling her hair and making inappropriate and unwelcome comments. This occurred several times a day for weeks.

20. Mr. Roachell would allow male co-workers to harass Plaintiff and other females in the same or similar manner. Specifically, on one incident in early January 2017, Sylvester Russell became enraged at Plaintiff after she had completed a perimeter check. Mr. Russell would scream at her telling

her to "carry her ass out the door" among other unprofessional and inappropriate statements.

21. Other female co-workers, Kaye Tipton, Keiara Williams, and Shannon Sansom, complained on their own behalf and on behalf of Plaintiff yet nothing was done to correct this behavior.

22. Upon information and belief, after HR and the Honor Hotline received Plaintiff's initial complaints, no investigation was conducted.

23. Approximately 2 weeks after, Plaintiff made her initial complaints and nothing had changed, she began trying to follow up with HR. Her calls to HR and the Hotline were ignored.

24. On or around January 13, 2017 after persistence by Plaintiff, she was instructed to attend a mandatory meeting with Mr. Willis present. Also, in attendance was Greg Douglas, General Manager over the North Little Rock office. His office was located in Tulsa Oklahoma. It was only at this time some sort of investigation began.

25. Plaintiff's site supervisor and co-worker harassment and discrimination continued and steadily worsened and retaliatory conduct began when others learned of her complaints.

26. Approximately February 1, 2017, Plaintiff contacted David Wackenhut via email correspondence detailing a fraction of what she had been enduring and pleaded for assistance.

27. Upon information and belief, at all relevant times, Mr. Wackenhut was and is the Regional Manager of Operations for the Midwest Region and is based out of Tulsa, Oklahoma. Still nothing was done for approximately 1 week.

28. On or around February 8, 2017, Mr. Roachell was placed on administrative leave pending an investigation.

29. Upon information and belief, Mr. Roachell was terminated as a result of this investigation.

30. However, even after Mr. Roachell's departure, Plaintiff's harassment, discrimination and retaliation conditions only worsened.

31. Mr. Scarborough and Mr. Willis began singling Plaintiff out for petty and numerous policy violations while other non-complaining and/or male employees were not subjected to this same treatment.

32. One example of such treatment occurred when Plaintiff began requesting new uniforms, as hers were becoming worn out and torn. She requested new uniforms from March 2017 until approximately May 2017. She never received any of the ordered uniforms. At which time, her pants had become so torn that she was forced to wear jeans to work. She was written up for coming to work in non-uniform pants. Plaintiff had ordered and requested fitting uniforms for weeks. When she complained to directly Mr. Willis, uniforms were overnighted to her but were several sizes too small showing her panty line and were uncomfortable to wear. However, Plaintiff

had no choice but to wear the ill-fitting uniforms until new uniform pants arrived weeks later. This issue also occurred for at least one other female employee, Shannon Sansom.

33. Another example of such conduct occurred on June 6, 2017 when Plaintiff was written up for 10 absences that occurred from April 1, 2017 until June 6, 2017. All these absences were due to Plaintiff's use of her personal FMLA medical leave and her use of FMLA medical leave to care for her mother.

34. Defendant would not allow or interfered with Plaintiff's use of her FMLA leave to care for her mother. Plaintiff's mother ultimately died from her lung cancer.

35. Not only did Defendant rob or otherwise illegally interfere with Plaintiff's use of her FMLA medical leave, they also caused her to spend less time with her mother in her final days and those days can never be given back to her.

36. Even more conduct occurred; such as, Plaintiff being written up for a visible tattoo and the wrong shoes while other non-complaining employees were allowed to show tattoos and wear brightly colored shoes without reprimand.

37. Plaintiff continually complained about the conduct and repeatedly asked that her use of FMLA medical leave not be used against her; her hours ultimately were cut in August 2017 causing her pay to drop.

38. When new supervisors or employees began employment with Defendant, Plaintiff would be threatened to not tell them about her issues or she would be terminated, specifically Lillian Green.

39. In December of 2017, Plaintiff filed a charge of discrimination against Defendant at the EEOC. At this point, the harassment, discrimination and retaliation only exponentially escalated to the point she could no longer endure her working conditions. By way of example, she was subjected to uniform and weapon inspections and told that she probably would not be paid for these mandatory meetings/inspections.

40. In January 2018, Plaintiff attempted on at least 3 occasions to apply for promotions and she was denied the opportunity to be considered for such promotions even though she was qualified and/or over-qualified for said positions.

41. Throughout Plaintiff's employment with Defendant, she was subjected to illegal discrimination and harassment that was so pervasive that it rose to the level of being a hostile work environment. Further, after engaging in the protected activity of complaining about such conduct she was retaliated against.

42. Defendant was charged with the responsibility of establishing and enforcing policies and procedures to prevent workplace discrimination, harassment and retaliation, but completely and utterly failed to do so.

43. Plaintiff has suffered physical and emotional damages, severe monetary damages, and lost wages including back pay and front pay as a result of the conduct of Defendant.

## **VIOLATIONS OF THE ARKANSAS CIVIL RIGHTS ACT AND TITLE VII**

44. Plaintiff re-alleges the foregoing as if fully set forth herein word for word.

45. Plaintiff is a female who was working for Defendant as a full-time employee at the time the claims arose.

46. Based on the facts as alleged above, Defendant has harassed, retaliated, and discriminated against Plaintiff on account of her gender/sex and for engaging in a protected activity in violation of the statutes set forth above.

47. As described above, Plaintiff was subjected to pervasive harassment and discrimination. The conduct was unwelcome.

48. The conduct was based on Plaintiff gender and complaints of same and such conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's positon would find that Plaintiff's work environment was hostile or abusive and as a result of such conduct, Plaintiff reasonably believed her work environment to be hostile or abusive.

49. Plaintiff's sex/gender was the motivating or determining factor(s) for her termination in violation of all statutes set forth in paragraph

above and Defendant's stated reasons for cutting Plaintiff's hours and writing her up and ultimately constructively discharging her are a pretext to hide discrimination.

50. Plaintiff reasonably believed she was been harassed, retaliated, and discriminated against because of her complaints of harassment, retaliation and discrimination.

51. Based on the facts as alleged above, Plaintiff's cut in hours/pay and ultimate constructive might dissuade a reasonable worker in the same or similar circumstances from making or supporting/reporting discrimination, retaliation or harassment.

52. Defendant would not have treat Plaintiff in such a manner as alleged herein had she not made her complaints or if she was not a woman.

53. As a direct and proximate result of Defendant's acts and omissions alleged herein, Plaintiff is entitled to recover compensatory and punitive damages, including but not limited to back pay, front pay, emotional and/or pain and suffering damages, interest, the cost of litigation and attorneys' fees in an amount to be proven at trial.

54. Plaintiff is entitled to punitive damages from Defendant since Defendant knew or should have known, in the light of the surrounding circumstances, that its conduct would naturally and probably result in damage and Defendant continued with such conduct in reckless disregard of the consequences. Defendant's conduct and that of its supervisors,

managers, and employees were within the course and scope of their employment with Defendant.

55. Defendant failed to establish and enforce adequate policies and procedures to prevent discrimination and retaliation in the workplace or to keep their employment practices and procedures from having a discriminatory effect on its employees.

## **VIOLATIONS OF THE FMLA**

56. Plaintiff re-alleges the foregoing as if fully set forth herein word for word.

57. Plaintiff was eligible for medical leave under FMLA and was approved by Defendant to have FMLA leave for herself and for her mother's serious health condition, illness or injury.

58. As such, Defendant's determined Plaintiff had a qualifying serious health condition and Plaintiff's mother had a qualifying serious health condition.

59. Plaintiff attempted to take leave and/or use her leave for her serious health condition and for the care of another, her mother.

60. Plaintiff was needed to care for her mother.

61. Plaintiff was absent from work to care for her mother.

62. Plaintiff gave timely notice of her need to be absent from work and/or gave notice as soon as practicable of her need to be absent from work.

63. Defendant interfered with Plaintiff taking such leave by scheduling unpaid non-mandatory meetings and calling them unpaid mandatory meeting; by not allowing Plaintiff to use leave or threatening termination if she took leave; by writing her up when she did take approved medical leave; and by not providing her with the necessary paperwork to apply for medical leave for herself or that of mother.

64. Plaintiff was not able to take leave because of the interference of Defendant.

65. Defendant refused to reinstate Plaintiff's hours after her use of FMLA leave for the care of her mother.

66. Defendant retaliated against Plaintiff for her use of FMLA leave.

67. Plaintiff's absences from for FMLA events was a motivating factor in Defendant's aforementioned negative actions and decisions relating to Plaintiff including but not limited to her cut in hours and ultimate constructive discharge.

68. Plaintiff's constructive discharge occurred because of Defendant's actions and decisions related to Plaintiff as it related to FMLA.

69. As a direct and proximate result of Defendant's acts and omissions alleged herein, Plaintiff is entitled to recover compensatory and punitive damages, including but not limited to back pay, front pay, emotional and/or pain and suffering damages, interest, the cost of litigation and attorneys' fees in an amount to be proven at trial.

70.  Plaintiff is entitled to liquidated damages from Defendant since Defendant knew or should have known, in the light of the surrounding circumstances, that its conduct would naturally and probably result in damage and Defendant continued with such conduct in reckless disregard of the consequences.  Defendant's conduct and that of its supervisors, managers, and employees were within the course and scope of their employment with Defendant.

71.  Defendant failed to establish and enforce adequate policies and procedures to prevent discrimination and retaliation in the workplace or to keep their employment practices and procedures from having a discriminatory and retaliatory effect on its employees.

## **CONSTRUCTIVE DISCHARGE**

72.  Plaintiff re-alleges the foregoing as if fully set forth herein word for word.

73.  Over a period of at least 15 months, Defendant made Plaintiff's working conditions intolerable.

74.  Over a period of at least 15 months, Defendant engaged in actions that Plaintiff's working conditions intolerable.

75.  Plaintiff's gender, use of FMLA, and/or engaging in a protected activity were a motivating factor in the Defendant's actions.

76.  Defendant acted with the intent of forcing Plaintiff to quit.

77.     Plaintiff's ultimate resignation was a reasonably foreseeable result of Defendant's conduct.

78.     A reasonable person in Plaintiff's situation would have found her working conditions so intolerable that resignation was the only reasonable alternative as she felt her life and safety at risk.

79.     As a direct and proximate result of Defendant's acts and omissions alleged herein, Plaintiff is entitled to recover compensatory and punitive damages, including but not limited to back pay, front pay, emotional and/or pain and suffering damages, interest, the cost of litigation and attorneys' fees in an amount to be proven at trial.

80.     Plaintiff is entitled to punitive damages from Defendant since Defendant knew or should have known, in the light of the surrounding circumstances, that its conduct would naturally and probably result in damage and Defendant continued with such conduct in reckless disregard of the consequences.  Defendant's conduct and that of its supervisors, managers, and employees were within the course and scope of their employment with Defendant.

81.     Defendant failed to establish and enforce adequate policies and procedures to prevent discrimination and retaliation in the workplace or to keep their employment practices and procedures from having a discriminatory effect on its employees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a trial by jury and a judgment against Defendant as follows:

(a) That the Court declare that Defendant's actions, policies and practices complained of herein violated Plaintiff's rights under the statutes set forth above;

(b) That the Court grant appropriate injunctive relief prohibiting Defendant from discriminating on the basis of her gender/sex or engaging in a protected activity;

(c) That the Court grant appropriate injunctive relief requiring Defendant to adopt a program providing training and orientation to current and prospective employees regarding their rights and obligations under the statutes set forth above;

(d) That Plaintiff be reinstated;

(e) That Plaintiff be awarded all damages to which she is entitled resulting from and proximately caused by Defendants' unlawful discrimination, harassment and retaliation, and violation of the statutes set forth above;

(f) That Plaintiff be awarded costs and reasonable attorneys' fees; and,

(g) That Plaintiff be awarded such other relief as the Court deems just and proper.

Respectfully submitted this 26th day of November 2018.

By: _____
Elizabeth LaRue-Grigg (Bar No. 03217)
Attorneys for the Plaintiff

GREGORY & LARUE, PLLC
Attorneys at Law
PO Box 251828
Little Rock, Arkansas 72205
(501) 580-7370
elarue@gregorylarue.com